**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ROBERT A. WEST,

  Plaintiff-Appellant,

v.

EVERGREEN HIGHLANDS
ASSOCIATION; STATE OF
COLORADO,

  Defendants-Appellees.

No. 05-1035
(D.C. No. 04-PC-385 (BNB))
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Plaintiff Robert West appeals from an order of the magistrate judge, acting

on consent of the parties, *see* 28 U.S.C. § 636(c)(1), dismissing the case for lack

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

of jurisdiction. This case has its roots in a state action plaintiff filed to challenge a newly issued homeowner's covenant requiring lot owners in his subdivision to be members of and pay assessments to the Evergreen Highlands Association, Inc. (EHA). EHA defended the covenant and also counterclaimed for past damages for breach of a pre-existing obligation, implied in law, requiring lot owners to defray the cost of maintaining common areas in the subdivision. Following a final decision for EHA on both points, *see Evergreen Highlands Ass'n v. West*, 73 P.3d 1 (Colo. 2003), *cert. denied*, *West v. Evergreen Highlands Ass'n*, 540 U.S. 1106 (2004), plaintiff filed this case, alleging that EHA and the State of Colorado acted jointly to deprive him of various federal and state rights. The magistrate judge concluded this action was barred by the *Rooker-Feldman* doctrine, which recognizes that under 28 U.S.C. § 1257 the only federal court with jurisdiction to review state court judgments is the Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-88 (2005) (discussing *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 482 (1983) and *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 414-16 (1923)). We review this jurisdictional determination de novo, *Kenmen Eng'g v. City of Union,* 314 F.3d 468, 473 (10th Cir. 2002), and affirm.[1]

---

[1]     *Kenmen Engineering* was abrogated in part, on grounds not material here, by *Exxon Mobile*, as noted in *Tal v. Hogan*, 453 F.3d 1244, 1256 n.10 (10th Cir. 2006), and *Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006).

The Supreme Court recently clarified that the *Rooker-Feldman* doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. Here, plaintiff's claim is precisely that he has been injured by the state court judgment, which he cites as the final action effectuating his injury and as the state action necessary to frame that injury in constitutional terms.[2] In an effort to avoid the adverse conclusion that would otherwise follow from these legal and factual premises, plaintiff advances three arguments on appeal.

Plaintiff's first broad line of argument begins with the contention that the *Rooker-Feldman* doctrine should not apply because the decision he challenges not only wrongfully diminished his rights but wrongfully expanded the rights of EHA and, thus, insofar as he seeks to rectify the latter action, he does so independently of any injury to him caused by the state court judgment he challenges. The immediate weakness of this contention is that by disclaiming any remedial effort

---

[2]    Plaintiff claims that the state court's enforcement of the covenant imbued EHA's private conduct with state character under the rule of *Shelley v. Kraemer*, 334 U.S. 1 (1948). We note that as a general matter *Shelley* has been limited to its facts, involving judicial enforcement of private racial discrimination. *See, e.g.*, *Loren v. Sasser*, 309 F.3d 1296, 1303 (11th Cir. 2002); *Parks v. "Mr. Ford,"* 556 F.2d 132, 135 n.6a (3d Cir. 1977). In any event, the question of state action, which goes to the merits of the case, is moot here in light of our jurisdictional disposition based on the *Rooker-Feldman* principle.

-3-

aimed at injury to himself, plaintiff would seem to be renouncing his standing to bring the case, as standing requires that the plaintiff have an injury in fact, caused by the conduct complained of, that will likely be redressed by a favorable decision in the case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In any event, plaintiff's contention rests on a specious separation of the benefit the state court decision gave EHA from the adverse consequences it held for him. The assertedly independent benefit to EHA was the holding that the subdivision is an implied common interest community entitling EHA to collect from lot owners the cost of common-area maintenance. But that was the very basis for the state supreme court's remand "to the trial court for calculation of [EHA's] damages" on its counterclaim against plaintiff. *Evergreens Highlands Ass'n*, 73 P.3d at 9. Plaintiff cannot separate the underlying legal holding from its immediate and obvious adverse effect on his interest.

In a similar vein, plaintiff insists that he is not challenging the disposition of his particular case but, rather, asserting a general constitutional challenge to the state common law announced in his case. This distinction, he argues, brings him within an exception to *Rooker-Feldman* illustrated by *Feldman* itself, which held that a challenge to a local (District of Columbia) bar admission rule – as opposed to the judicial decision enforcing the rule – could be brought in federal district court. *See Feldman*, 460 U.S. at 485-86. But the point of this distinction, as the Supreme Court has recently reaffirmed, was that "in promulgating the bar

admission rule, . . . the D.C. court had acted legislatively, not judicially." *Exxon Mobil Corp.*, 544 U.S. at 285-86. In plaintiff's case against EHA, however, the state supreme court did not act legislatively. On the contrary, the court performed a uniquely judicial function: it determined the common law of the state. Not only is plaintiff's attempt to equate such a judicial determination with the legislative (or regulatory) act of rule-making conceptually misguided, it would effectively gut the *Rooker-Feldman* doctrine, as any artful pleader could re-frame a challenge to a particular state court decision as a "general" challenge to the state court's "legislative" determination of the law on which its decision rested. Plaintiff cites no authority for this doubly dubious position.

Plaintiff's final effort in this general line of argument relies on *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987). "In *Pennzoil*, five justices concluded in concurring opinions that *Rooker-Feldman* did not divest a federal court of jurisdiction over [a] constitutional challenge to Texas's *post-judgment* collection procedures," which was characterized as "separable from and collateral to the merits of the state-court judgment." *Kenmen Eng'g*, 314 F.3d at 475-76 (quotations omitted). Here, however, plaintiff's challenges are directed not at collateral procedures separable from the merits of the state court decision, but at the decision itself. And plaintiff raised (albeit belatedly) in the state action the constitutional objections he now asserts in this federal case, at both the state appellate and supreme court levels.

-5-

Plaintiff contends that the state courts did not give these objections due consideration, but that is not a basis for avoiding *Rooker-Feldman* limitations on federal court review. Insofar as plaintiff complains that he was not given a sufficient opportunity to raise and pursue these matters in the state courts, his point is deflected by *Kenmen Engineering*, which held that application of the *Rooker-Feldman* doctrine does not turn on whether the state court proceeding afforded the plaintiff an opportunity to litigate his federal claims. *Kenmen Eng'g*, 314 F.3d at 478-80. In any event, as noted below, plaintiff was precluded from pursuing his constitutional claims on his state appeal only because he had failed to take advantage of the earlier opportunity to pursue them in the state trial court. A foregone opportunity is not a denied opportunity.

Insofar as plaintiff challenges the state courts' disposition of these matters, his argument fails for reasons explained below in connection with his second issue on appeal. Plaintiff's certiorari petition to the Supreme Court following the final decision in his state litigation reflects the proper – and exclusive – means for seeking review of objections regarding how the state appellate courts proceeded, consistent with § 1257.

The second distinct issue designated by plaintiff consists of his assertion that the *Rooker-Feldman* doctrine should not bar federal review of constitutional claims when state courts "have mistakenly refused to consider the same or similar claims made in State litigation." Aplt. Opening Brief at 11. The Colorado Court

of Appeals ruled in plaintiff's favor on the basic question whether EHA lacked authority to issue the new assessment covenant and did not address his alternative constitutional arguments against the assessment, which had not been raised in the trial court. *See West v. Evergreen Highlands Ass'n*, 55 P.3d 151, 154-55 (Colo. Ct. App. 2001). After the Colorado Supreme Court reversed this ruling, plaintiff sought to reintroduce the constitutional issues by way of rehearing, which the court summarily denied. Plaintiff now insists that the state courts' handling of his constitutional objections was a "mistake," and that this circumstance negates the *Rooker-Feldman* doctrine. There are several problems with this argument.

Given the broad sense in which plaintiff seeks to use the operative term "mistake" here, just to signify analytical or procedural error in a disposition, his argument is hopelessly circular. He claims in effect that the *Rooker-Feldman* doctrine barring federal review of state decisions does not apply if, by engaging in the very review the doctrine prohibits, a federal court concludes that a state court erred. Such a self-justifying exception would swallow the *Rooker-Feldman* doctrine whole.

Actually, the authority plaintiff relies on for the exception uses the term "mistake" in a more limited sense, which would not apply here. Plaintiff cites *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.)*, 801 F.2d 186 (6th Cir. 1986), which (quoting a case addressing res judicata,

not *Rooker-Feldman*) states: "A federal court 'may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake. . . ." *Id.* at 189 (quoting *Resolute Ins. Co. v. North Carolina*, 397 F.2d 586, 589 (4th Cir. 1968)). A judgment procured by one of the listed means is not simply a judgment in error. *Resolute Insurance* itself illustrates this point, holding that a state court loser's contention that the decision was "grossly erroneous" provided "no basis" for a collateral attack in federal court. *Resolute Ins. Co.*, 397 F.2d at 589. Rather, the principle turns on the improper *procurement* of the judgment, i.e., whether a party "deceived the Court into a wrong decree." *Sun Valley Foods Co.*, 801 F.2d at 189 (rejecting collateral attack where deceit not shown) (quotation omitted); *see Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 203 n.11 (4th Cir. 1997) (rejecting collateral attack under *Resolute Insurance* in absence of "fraud or deception on the part of the [state court winner] in the procurement of the [judgment] at issue"). Thus, by complaining of mere state court error, plaintiff has not even asserted an appropriate basis for invoking the principle on which he relies.[3]

---

[3]     This circuit has not held that *Rooker-Feldman* may be circumvented by a collateral attack of the sort suggested in the cases discussed above. There is good reason to balk at such a step. State rules of procedure provide various means to attack a wrongfully obtained judgment. *See In re the Marriage of Gance*, 36 P.3d 114, 116-18 (Colo. App. 2001) (discussing motion for relief from judgment based on misconduct of party, equitable action for relief from judgment based on fraud, and claim of "fraud upon the court"). Construing *Rooker-Feldman* to permit

(continued...)

For his third issue on appeal, plaintiff asserts that the *Rooker-Feldman* doctrine provides an incentive for state courts to ignore the civil rights of parties who cannot turn to the federal courts for redress. This is an objection more aptly addressed to the legislature for amendment of § 1257 or to the Supreme Court for modification of the *Rooker-Feldman* doctrine, whose actions on such matters are binding on this court. We do deem it appropriate to note, however, that plaintiff unjustifiably discounts the integrity of state judiciaries and the salutary effect of Supreme Court review under § 1257. Here, for example, there is nothing in the Colorado courts' treatment of plaintiff's unpreserved constitutional arguments to warrant plaintiff's criticism, and while Supreme Court certiorari review (denied here) does not operate as a case-by-case error-correction mechanism, it does provide a systemic protection – guided by the Court's careful selection of review-worthy decisions – for all cases in which constitutional rights are at issue. *See generally* 28 U.S.C.A. § 1257, Commentary on 1988 Revision.

Finally, plaintiff objects that his consent to disposition of this case by a magistrate judge under 28 U.S.C. § 636(c)(1) was obtained in a misleading manner and requests that, in the event of remand, the case be returned to the district court

---

[3](...continued)
federal reconsideration and nullification of state judgments on grounds that could have been pursued in state court arguably allows under the rubric of collateral attack just another mechanism for lower federal court review unauthorized under § 1257. In any event, given the inadequacy of plaintiff's factual basis noted above, we need not resolve the larger legal point here.

judge to whom it was originally assigned.  Our holding that the district court lacks jurisdiction over the action renders this objection, with its request for prospective relief on remand, moot.  *Cf. Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 946 (10th Cir. 2001) (reaching same conclusion with respect to recusal objection raised in support of request for reassignment of case to new judge on remand); *Utah Foam Prods. Co. v. The Upjohn Co.*, 154 F.3d 1212, 1219 (10th Cir. 1998) (same).

The judgment of the magistrate judge is AFFIRMED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge