466 B.R. 170 (2012)
INOFIN INCORPORATED, Debtor.
Raymond C. Green, Inc., Appellant,
v.
Mark G. DeGiacomo, Chapter 7 Trustee, Appellee.
BAP No. MB 11-056. Bankruptcy No. 11-11010-JNF.
United States Bankruptcy Appellate Panel of the First Circuit.
March 6, 2012.
*171 Nicholas Nesgos, Esq., David J. Reier, Esq., Laura Otenti, Esq., and Stanley N. Wallerstein, Esq., on brief for Appellant.
Thomas S. Vangel, Esq., Ryan M. MacDonald, Esq., Mark G. DeGiacomo, Esq., and Keri L. Wintle, Esq., on brief for Appellee.
Before HAINES, LAMOUTTE, and KORNREICH, United States Bankruptcy Appellate Panel Judges.
KORNREICH, Bankruptcy Judge.
Inofin Incorporated ("Inofin") is the debtor in this chapter 7 case. Raymond C. Green, Inc. ("RCG"), a creditor, appeals from the bankruptcy court order denying its motion for relief from the automatic stay. Mark G. DeGiacomo is the chapter 7 trustee. For the reasons set forth below, we conclude that the order is not final. Accordingly, this appeal is DISMISSED for lack of jurisdiction.

BACKGROUND
The facts are largely undisputed and are set forth in great detail in the extensive and well-crafted memorandum of findings and conclusions accompanying the bankruptcy judge's order. See In re Inofin, Incorporated, 455 B.R. 19 (Bankr.D.Mass. 2011). We provide this summary as a prelude to our discussion of jurisdiction.
For many years before the commencement of this involuntary case, Inofin was engaged in financing the sales of used automobiles for retail dealers. Upon the sale of an automobile to be financed by Inofin, the dealer would assign the retail installment contract to Inofin in exchange for payment of the balance due on the purchase price. Inofin would service the loan and receive the term payments from the retail customer. To finance these transactions, Inofin borrowed money from many lenders. These lenders received assignments of the retail installment contracts *172 generated by Inofin as collateral for their advances. In good times, Inofin repaid its lenders from the payments it received from the retail customers.
RCG was one of Inofin's lenders. According to a security agreement dated April 17, 1996, Inofin gave RCG a security interest in those retail installment contracts that were produced with funding from RCG. However, in actual practice over the years, Inofin assigned random batches of retail installment contracts to RCG, including contracts that did not arise from RCG's advances. Thus, in the end, when Inofin owed RCG in excess of $8,000,000, RCG's portfolio of retail installment contracts contained contracts that were not traceable to funding from RCG.
Months before the order for relief was entered in the involuntary bankruptcy case, RCG purportedly acquired its portfolio of retail installment contracts at its own secured party sale. That sale did not dissuade the chapter 7 trustee from collecting payments on the retail installment contracts held by RCG. This prompted RCG to file a motion for relief from stay under § 362(d) of the Bankruptcy Code.[1]
RCG asserted under § 362(d)(1) that the estate had no interest in its portfolio of Inofin's retail installment contracts because RCG had acquired them at its secured party sale and, should it be determined that RCG had not lawfully acquired its collateral at the secured party sale, the trustee would be unable to provide RCG with adequate protection. RCG also asserted that it was entitled to relief under § 362(d)(2) because there could be no effective reorganization in a chapter 7 case.
The trustee objected to RCG's motion, arguing that: (a) RCG lacked a valid security interest in the purported collateral because, contrary to the security agreement dated April 17, 1996, RCG could not trace the retail installment contracts in its portfolio to its own advances to Inofin; (b) because RCG could not tie the contracts to its advances, no security interest had attached to the retail installment contracts held by RCG; (c) RCG could not have acquired collateral in which it had no security interest at its secured party sale; and, (d) even if RCG had possessed a valid security interest, its acquisition of the retail installment contracts at the secured party sale was voidable because of the unlawful manner in which the sale had been conducted. The trustee requested an evidentiary hearing on those issues and on whether RCG's claim should be equitably subordinated to the claims of general unsecured creditors.
After an evidentiary hearing, the bankruptcy court denied RCG's motion for relief from stay. In support of its very succinct order, the bankruptcy court supplied a memorandum of its findings and *173 conclusions.[2] At the outset of the memorandum, the bankruptcy court noted that RCG had, in effect, sought a determination of the validity and extent of its lien in its motion for relief from stay, a determination that should have been sought in an adversary proceeding. Yet, with the apparent consent of the parties, the bankruptcy court concluded that it would determine the validity and extent of RCG's lien in the context of RCG's motion. The appropriateness of that conclusion is not in contention. However, the record reflects that soon after RCG brought its motion for relief, the trustee commenced a multi-count adversary proceeding against RCG seeking: a determination of the validity of RCG's lien, the subordination of RCG's claim, a declaratory judgment,[3] the avoidance of fraudulent transfers under § 548, and the avoidance of preferential transfers under § 547. At oral argument, the parties acknowledged that this adversary proceeding is pending.
On detailed findings that we have no need to recount at this time, the bankruptcy court concluded that "RCG failed to establish a colorable claim to secured status and concomitantly failed to establish entitlement to relief from the automatic stay." The court reasoned that "[b]ecause the loan proceeds advanced by RCG [could] not be traced to its purported collateral... its security interest did not attach and [was] not enforceable as to that collateral...." Ultimately, the bankruptcy court concluded that RCG was not entitled to relief from the automatic stay "for cause" under § 362(d)(1) because it did not hold a security interest in Inofin's retail installment contracts. There appears to be no conclusion with respect to § 362(d)(2).
On appeal, RCG seeks a review of the bankruptcy court's preludial findings and conclusions on the validity of RCG's security interest and the lawfulness of its secured party sale. Neither RCG nor the trustee has challenged our jurisdiction to review those findings and conclusions.

DISCUSSION
We assess our appellate jurisdiction even when it goes unchallenged. See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.), 226 B.R. 724 (1st Cir. BAP 1998). Because our jurisdiction is limited to appeals from final judgments, orders and decrees, see Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (1st Cir. BAP 1998), and because our understanding of the law in this Circuit is that an order denying relief from stay is not presumptively final, we must first determine if the order denying relief from stay in this case is a final order.[4]
A decision is considered "final if it `ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" In re Bank of New England, 218 B.R. at 646 (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). "Ordinarily, a judgment is final ... only if it conclusively determines all claims of all *174 parties to the action." Nichols v. Cadle Co., 101 F.3d 1448, 1449 n. 1 (1st Cir.1996) (citation omitted). An interlocutory order "`only decides some intervening matter pertaining to the cause, and ... requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" In re Bank of New England, 218 B.R. at 645 (quoting In re Am. Colonial Broad. Corp., 758 F.2d 794, 801 (1st Cir.1985)).
"[I]n contrast to most other civil litigation, finality in bankruptcy is a more elusive concept." Iannochino v. Rodolakis (In re Iannochino), 242 F.3d 36, 43 (1st Cir.2001) (citing In re Am. Colonial Broad. Corp., 758 F.2d at 801). "`[C]onsiderations unique to bankruptcy proceedings require courts to adopt a pragmatic approach in determining the finality of bankruptcy orders.'" In re Bank of New England, 218 B.R. at 647 (quoting Official Bondholders Comm. v. Chase Manhattan Bank (In re Marvel Entertainment Group, Inc.), 209 B.R. 832, 835-36 (Bankr. D.Del.1997)). Indeed, "`no uniform and well-developed set of rules exists and on many points there is a good deal of uncertainty.'" Caterpillar Fin. Serv. Corp. v. Braunstein (In re Henriquez), 261 B.R. 67, 69 (1st Cir. BAP 2001) (quoting Brandt v. Wand Partners, 242 F.3d 6, 13 (1st Cir.2001)). This is clearly so when the order is one denying relief from stay. While "all seem to agree that orders lifting the automatic stay are final," this "is not always the case ... when, as in the matter before us, the bankruptcy court denies the moving party relief from the automatic stay." Id. at 70 (citations and quotations omitted).
Ordinarily, "the hearing on a motion for relief from stay is meant to be a summary proceeding," Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 31 (1st Cir.1994), because "such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate." Id. at 32. Thus, it follows that when relief from stay is denied because a moving party has failed to make the necessary showing of a colorable claim in a non-evidentiary hearing, the order denying relief would not be a final order. See Henriquez, 261 B.R. at 71. This is particularly so when, as in Henriquez, there is a pending adversary proceeding encompassing the same issues. Then, "such a determination must necessarily await the resolution of the trustee's adversary proceeding." Id. However, absent a pending adversary proceeding, when a bankruptcy court considers "any defenses or counterclaims that bear on whether a colorable claim exists" as a prelude to the denial of relief from stay, the order denying relief may be ripe for appellate review. United States v. Fleet Bank of Mass. (In re Calore Exp. Co., Inc.), 288 F.3d 22, 35 (1st Cir.2002).
All of this suggests a fact specific, case-by-case inquiry on the question of finality. The hearing below was plenary and the bankruptcy court rendered comprehensive findings and conclusions with the consent of the parties. Those findings and conclusions appear to support the entry of a partial judgment on one or more of the counts in the pending adversary proceeding. And therein lies the rub. "The finality requirement represents an attempt to avoid duplicative or piecemeal appeals." McGowan v. Global Indus., Inc. (In re Nat'l Office Prods., Inc.), 116 B.R. 19, 20 (D.R.I.1990).
On this record, we cannot say that there is nothing more for the court to do but execute the judgment. Because the *175 bankruptcy court's determination on the motion for relief is inextricably intertwined with the unresolved issues in the adversary proceeding, entertaining an appeal at this time would set "the stage for the fragmentation of appellate review." See Nichols v. Cadle Co., 101 F.3d at 1449. "`Were appellate review available on demand whenever a district court definitely resolved a contested legal issue ..., the `finality rule' would be eviscerated.'" In re Bank of New England, 218 B.R. at 646 (citation omitted) (emphasis in original); see also Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (citing reasons for final judgment rule as including deference to trial judge, potential that piecemeal litigation will undermine role of trial judge, efficient judicial administration, and avoidance of harassment and cost of successive appeals from intermediate rulings). As stated by the Supreme Court, "[s]o long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

CONCLUSION
This appeal is DISMISSED for lack of jurisdiction because the order denying relief from stay is not a final order.
NOTES
[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37.

Section 362(d) provides for the lifting of the automatic stay as follows:
On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
(2) with respect to a stay of an act against property under subsection (a) of this section, if
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization. . . .
11 U.S.C. § 362(d).
[2] The order stated: "In accordance with the Memorandum dated July 27, 2011, the Court denies the Motion of [RCG] for Relief from the Automatic Stay for Related Relief."
[3] We cannot ascertain the precise nature of declaration sought, but we presume it relates to the avoidance of the secured party sale.
[4] We may also hear appeals from certain interlocutory orders. Here, we decline to exercise our discretion to do so because there has been no request for interlocutory review and because there is no apparent, compelling reason for us to undertake interlocutory review under the circumstances of this case.